RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 16-5181

RONALD C. LEWIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:15-cr-00020-3—Karen K. Caldwell, Chief District Judge.

Decided and Filed:  August 25, 2017

Before:  CLAY, ROGERS, and SUTTON, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:**  Roger A. Cox, COX & COX, Fenelton, Pennsylvania, for Appellant.  Charles P. Wisdom Jr., Lauren Tanner Bradley, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

ROGERS, Circuit Judge.  This case presents the question of whether a warrant is required for a police officer, not investigating any wrongdoing, to open the passenger door of a parked truck to ask whether the sleeping occupant of the truck would be able to drive the occupant's intoxicated girlfriend home.  Fortunately, the Fourth Amendment does not impose technical prerequisites upon such a natural act of community service.

On an evening in August 2014, local police officer Greg Turner responded to reports that a woman was intoxicated in a Wal-Mart in London, Kentucky. Once inside the Wal-Mart, Turner found the woman, later identified as Carol Lakes. Officer Turner noticed that Lakes's "balance was off, she was holding herself up by the buggy, she had trouble keeping her eyes open," and she was "nodding off." Once he got closer, Officer Turner further noticed that Lakes's speech was slurred, her eyes "red and glassy," and her mouth "real dry." Officer Turner concluded that Lakes was "clearly under the influence," approached her, and "asked her if she was all right." Lakes told Officer Turner that she had been taking pain pills due to some back trouble.

Officer Turner then asked Lakes if she was at the Wal-Mart by herself. Lakes answered that she was at Wal-Mart with her boyfriend—later identified as defendant Ronald Lewis—who was outside in his truck. Officer Turner responded: "Well, we'll go see if your boyfriend's all right, talk to him and he can drive you out of here. You can go home." Officer Turner also suggested to Lakes that he would have to arrest her if Lewis could not drive her home. At some point around then, another police officer, Rick Cloyd, arrived at the scene. Lakes told the officers that her boyfriend would in fact be able to drive her home, and led them outside to her boyfriend's truck so that they could "check to make sure that he was all right to drive."

The officers approached Lewis's four-door Chevy truck, but, because it was dark outside and the truck's windows were tinted, could not tell whether it was occupied. Officer Turner went around to the front-driver side of the truck, looked through the window, and saw Lewis asleep on the passenger side. Officer Cloyd and Lakes went around to the front-passenger side of the truck.

There is some dispute as to what happened next. Officer Turner later testified that either Officer Cloyd or Lakes opened the front passenger-side door, next to which Lewis was sitting. Lewis testified that it was Officer Cloyd—and not his girlfriend Lakes—who opened the passenger-side door. For the purposes of this opinion, we adopt the district court's assumption that it was Officer Cloyd who opened the door.

When the door opened, the interior dome light went on, causing Lewis to "startle[]" and "d[o] a little jerk." This light enabled Officer Turner to see that Lewis had a clear plastic baggie on his lap. Lewis tossed the baggie over the truck's console onto the back floorboard.

Officer Turner suspected that the baggie contained marijuana. Accordingly, he shined his flashlight onto the baggie on the back floorboard, and observed that it contained "like a bluish color stuff in it," which he thought could be marijuana but might also be blue pills. Officer Turner then opened the truck door, inspected the bag more closely, and saw that it did in fact contain pills. Turner asked Lewis about the pills, and Lewis "stated that he didn't know nothing about them, and that's all he would say." Lewis appeared to be "under the influence" as well, based on his slurred speech. Lewis and Lake were then both arrested. The bag of pills was tested and found to contain 493 oxycodone 30 mg tablets and 5 pills of Xanax, the trade name for the controlled substance alprazolam. An additional four Xanax pills were found on Lewis's person.

Lewis was indicted on various charges related to the possession of oxycodone and alprazolam in violation of 18 U.S.C. §§ 841(a)(1), 846. Lewis moved to suppress all evidence seized in his vehicle as the products of an illegal search. The district court, however, denied Lewis's motion. The district court found that, at least until Officer Turner saw the baggie, the officers' "sole purpose was to find Lakes a safe ride home," and that the officers "were not investigating a crime." Accordingly, the district court concluded that the officers were initially not engaged in "traditional law enforcement functions" and invoked the "community caretaker" exception to the Fourth Amendment's warrant requirement. *See United States v. Rohrig*, 98 F.3d 1506, 1521–22 (6th Cir. 1996). The district court further concluded that, once Officer Turner saw Lewis toss the baggie over the back seat, "the officers' function changed to the investigation of a crime," such that the community-caretaker exception could not apply from that point forward. However, the district court also held that Lewis's behavior at that point gave Officer Turner probable cause to search the truck under the automobile exception to the warrant requirement. *See Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998). In particular, the district court noted Lewis's possession of a clear plastic baggie, his "deliberately furtive" action of throwing the baggie into the back seat once he saw the officers, his own slurred speech, and

his girlfriend's visible intoxication as reasonable grounds for belief that Lewis's truck contained evidence of a crime.  Accordingly, the district court held that, based on the community-caretaker and the automobile exceptions to the warrant requirement, there had been no violation of Lewis's Fourth Amendment rights, and so his motion to suppress was denied.

Lewis then pleaded guilty to two of the four counts against him—possession of oxycodone with intent to distribute and possession of alprazolam with intent to distribute, both in violation of 18 U.S.C. §§ 841(a)(1), 846—but preserved his right to appeal the denial of his suppression motion.  Lewis now exercises that right and appeals to this court.  On appeal, Lewis limits his challenge to the opening of the door.  But the Fourth Amendment does not preclude the mere opening of the vehicle door in the context of these facts.  The police here engaged in a function that was entirely divorced from a criminal investigation, such that the "community caretaker" exception to the Fourth Amendment applied.  Therefore, because "[t]he standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures," *South Dakota v. Opperman*, 428 U.S. 364, 370 n.5 (1976), Officers Turner and Cloyd did not need a warrant or probable cause for their limited intrusion on Lewis's privacy.

First, the local officers' action here fits within the community-caretaker exception.  Officers Turner and Cloyd responded to reports that a woman was intoxicated in a Wal-Mart; observed that she was, in fact, intoxicated to the point of "nodding off"; and tried to get her out of the store without arresting her by finding her a safe ride home.  This case is similar to other cases in which this court has applied the community-caretaker exception.  *See Rohrig*, 98 F.3d at 1522; *United States v. Brown*, 447 F. App'x 706, 709 (6th Cir. 2012); *United States v. Koger*, 152 F. App'x 429, 429 (6th Cir. 2005) (per curiam).  Most notably, in *Rohrig*, local police officers responded to complaints of loud music blaring from a private home in the middle of the night and entered the home without a warrant "for the limited purpose of locating and abating [the] nuisance"—an action that this court deemed to fall within the community-caretaker function.  98 F.3d at 1509–10, 1521–22.  Similarly, in this case, local police officers Turner and Cloyd responded to reports of a visibly intoxicated woman in a Wal-Mart, and approached her boyfriend Lewis solely to determine whether he would be able to drive her home.

Second, there is no evidence that the officers' action was taken with any traditional law-enforcement purpose that would make the community-caretaker exception inapplicable. The community-caretaking exception applies most clearly when the action of the police is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," *United States v. Brown*, 447 F. App'x 706, 709 (6th Cir. 2012) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). Here, the district court found that the officers' "sole purpose was to find Lakes a safe ride home," from which the district court concluded that the officers "were not investigating a crime." In the context of a motion to suppress, such a finding can be overturned only if clearly erroneous. *Brown*, 447 F. App'x at 708 (citing *United States v. Blair*, 524 F.3d 740, 747–48 (6th Cir. 2008)). There was no clear error here: Officer Turner testified as to his and Officer Cloyd's purpose, which the district court clearly found credible; furthermore, there is no evidence in the record to rebut this account of the officers' purpose. Accordingly, this case is similar to *Brown*, in which this court reasoned that the community-caretaker exception would apply to a police officer's stopping a vehicle because the officer was not seeking to investigate a crime but only to question the driver as to the whereabouts of a missing minor. 447 F. App'x at 710. Furthermore, this case is distinguishable from *United States v. Williams*, where this court refused to apply the community-caretaking exception for officers who entered a home, ostensibly to investigate claims of a water leak, but also because they had grounds to suspect the home was being used to grow marijuana. 354 F.3d 497, 508 (6th Cir. 2003).

Third, given the community-caretaking nature of the officers' action, any limited intrusion on Lewis's privacy from simply opening the door was reasonable. Lewis was in his car, not his home, which weighs in favor of the reasonableness of any search. As the Supreme Court noted in the case that gave rise to the community-caretaker exception, "for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars," because of the "ambulatory character" of cars and the fact that "extensive, and often noncriminal contact with automobiles will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." *Dombrowski*, 413 U.S. at 439, 442 (quoting *Chambers v. Maroney*, 399 U.S. 42, 52 (1970)). Accordingly, as this circuit has noted, "the community caretaking function articulated in [*Dombrowski*] has been principally applied to the warrantless searches of

automobiles." *Taylor v. Mich. Dep't of Nat. Res.*, 502 F.3d 452, 462 (6th Cir. 2007) (listing cases). The fact that Lewis was in his car also distinguishes this case from the two cases that he cites in arguing that the community-caretaker exception should not apply. *See United States v. Washington*, 573 F.3d 279, 288 (6th Cir. 2009); *Williams*, 354 F.3d at 508. In both cases, the court held that the community-caretaker exception did not apply because whatever interest the community had in the intrusion could not overcome the significant privacy interests in the home—a concern that is not present in this case.

Furthermore, the officers' intrusion into Lewis's car was minimal, which also weighs in favor of the reasonableness of any search. This is not a case where the police officers conducted a search of the vehicle looking for drugs—for example, by looking in the glove compartment, looking under the seats, opening the trunk, or opening containers in the car. Rather, the officers merely opened the door to check on the apparently sleeping Lewis, which prompted Lewis to throw the baggie containing pills onto the back floorboard of his truck, catching Officer Turner's attention. True, the officers apparently did not knock on the truck window or attempt to speak with Lewis before opening the door, which might have been more respectful of Lewis's privacy. However, as the Fourth Circuit has reasoned, "the community-caretaking exception is not limited to the least intrusive means of protecting the public." *United States v. Johnson*, 410 F.3d 137, 146 (4th Cir. 2005) (citing *Dombrowski*, 413 U.S. at 447). Given that the officers' opening of Lewis's door was minimally intrusive, any failure to knock or attempt to speak does not make the officers' actions here unreasonable.

On this appeal, Lewis does not challenge the district court's reasoning with respect to the actions of the police after they opened the door and saw Lewis toss the baggie onto the back floorboard. Accordingly, we have no need to review the district court's application of the automobile exception to the subsequent search.

The judgment of the district court is affirmed.