# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 155

State of North Dakota,                                    Plaintiff and Appellee

v.

Jered Mark Petersen,                                    Defendant and Appellant

## No. 20230049

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Stephannie N. Stiel, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Tufte, Justice.

Casey W. Moen, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Erica A. Skogen Hovey, Fargo, N.D., for defendant and appellant.

## State v. Petersen
## No. 20230049

**Tufte, Justice.**

[¶1] Jered Petersen appeals from a criminal judgment entered on a conditional plea of guilty to actual physical control of a vehicle while under the influence of alcohol, reserving the right to appeal the order denying his motion to suppress evidence. He argues law enforcement unlawfully trespassed into his vehicle, violating his right to be free from unreasonable searches and seizures. We reverse, concluding law enforcement unlawfully searched Petersen's vehicle, and remand for further proceedings.

I

[¶2] Petersen was charged with being in actual physical control of a vehicle while under the influence of alcohol, a fourth or subsequent offense in 15 years. He moved to suppress evidence. The district court held a suppression hearing. The relevant facts are undisputed.

[¶3] At approximately 1:48 a.m. on March 18, 2022, two Fargo Police Officers responded to a report of a vehicle accident in a bar parking lot in south Fargo. The complainant reported that his vehicle was struck by a semi-truck and the driver was asleep behind the wheel of the parked semi. The first responding officer spoke with the complainant at the scene, who told the officer that although he did not see the accident, he believed the semi struck his vehicle because he observed that the paint color on the semi's bumper matched the color of his vehicle.

[¶4] The second responding officer testified that upon arriving at the scene, she noticed the semi was idling with the driver asleep. The officers then approached the semi. The second responding officer approached the passenger-side door of the semi, while the first responding officer approached the driver-side door. The second responding officer immediately opened the unlocked passenger-side door and stepped up onto the running boards, followed by announcing "Fargo Police." The officer on the driver's side then began tapping on the outside window with his flashlight and shined the light into the cab.

1

The individual asleep in the driver's seat did not respond. The officers testified it was difficult to hear because the semi's engine was running.

[¶5] The second responding officer testified that after standing on the running boards for about a minute, she flipped open the wallet lying on the passenger seat. After walking around to the passenger side, the other officer removed the identification card, identifying the individual as Jered Petersen. The second responding officer then entered the cab and turned the engine off. She gave Petersen sternum rubs, waking him up. She testified that at that point she smelled an odor of alcohol emanating from Petersen and noticed he had bloodshot watery eyes. The officers eventually administered field sobriety tests, a preliminary breath test, and a chemical breath test.

[¶6] After the hearing, the district court denied the motion to suppress, concluding the community caretaker exception to the warrant requirement applied and the officers' actions of opening the semi-truck door and checking Petersen's wallet for identification were reasonable under the circumstances. Petersen conditionally pled guilty to the actual physical control charge, reserving his right to appeal the order denying suppression. The court sentenced Petersen, stayed execution of sentence pending appeal, and entered judgment.

II

[¶7] Petersen argues the district court erred in denying his motion to suppress evidence. The standard of review is well established:

> When reviewing a district court's decision on a motion to suppress, we defer to the court's findings of fact and resolve conflicts in testimony in favor of affirmance. This Court will affirm the district court's decision on a motion to suppress unless we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence. Whether a finding of fact meets a legal standard is a question of law, which is fully reviewable on appeal. Whether law

enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law.

*State v. Boger*, 2021 ND 152, ¶ 7, 963 N.W.2d 742.

### III

[¶8] Petersen argues law enforcement unlawfully trespassed into his vehicle when the officer opened his semi-truck door to gather information and without first attempting to get his attention.

[¶9] The Fourth Amendment and N.D. Const. art. I, § 8, protect individuals against unreasonable searches and seizures of their persons, houses, papers, and effects. A vehicle is an "effect" and the State's trespass upon a vehicle with the intent of obtaining information constitutes a search under the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 404, 408 n.5 (2012); s*ee also New York v. Class*, 475 U.S. 106, 114-15, 119 (1986) (holding that officer's reaching into vehicle to remove papers obscuring VIN was a search, albeit a reasonable search under the circumstances). Because law enforcement did not have a search warrant, an exception to the warrant requirement must apply for law enforcement action to have been lawful. *State v. Washington*, 2007 ND 138, ¶ 10, 737 N.W.2d 382 ("Warrantless searches are unreasonable unless they fall within a recognized exception to the warrant requirement.").

[¶10] The community caretaker doctrine is an exception to the warrant requirement. *State v. Stewart*, 2014 ND 165, ¶ 12, 851 N.W.2d 153. Community caretaking functions are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Bridgeford v. Sorel*, 2019 ND 153, ¶ 8, 930 N.W.2d 136. "Contact with citizens falls within the community caretaking role when an officer's objective is to help a person in possible need of assistance." *Id*. Petersen contends that because the officers were investigating the possibility of his violating the law, their actions were not totally divorced from the criminal investigation and the community caretaker exception does not apply.

3

[¶11] In *Bridgeford*, we analyzed a law enforcement encounter with a sleeping individual in a parked vehicle and concluded knocking on the window was reasonable:

> Where it is obvious a citizen neither needs nor desires assistance, an officer has no community caretaking role to fill. However, the appearance of an individual slumped over sleeping is not an obvious indication that a citizen does not need assistance. When an officer encounters a person whose state of consciousness prevents a conversational inquiry from occurring, the officer must decide the actions necessary to get the person to respond and may need to approach a non-responsive person differently from a person who is conscious and able to converse with the officer. To determine if assistance is needed, it is reasonable for an officer to knock on a vehicle's window. By knocking, an officer is doing "no more than any private citizen might do." *Florida v. Jardines*, 569 U.S. 1, 8 (2013) (discussing warrantless searches of homes).

2019 ND 153, ¶ 10 (cleaned up). Thus, we concluded the officer's knocking on the vehicle window was within the scope of the community caretaking function and not an impermissible trespass. *Id.* at ¶ 13.

[¶12] Additionally, the Court in *Bridgeford* reviewed whether the officer's subsequent opening of the vehicle's unlocked door was also a community caretaking function. There, the officer saw an individual asleep in a running vehicle at a gas station parking lot at 1:38 a.m. 2019 ND 153, ¶ 2. The officer approached the vehicle and "knocked loudly on the window and raised his voice for approximately 15 seconds." *Id.* After the individual, Bridgeford, failed to respond, the officer opened the door and shook him until he awoke. *Id.* The majority of the Court noted there was no indication in the record of "any obvious sign Bridgeford did not need or desire assistance." *Id.* at ¶ 18. The majority concluded the officer's entering of the vehicle was within the community caretaker function, stating "our caselaw allows an officer to continue a community caretaker role from outside a vehicle to the inside of a vehicle when a sleeping individual *fails to respond to attempts to get a response from outside the vehicle*." *Id.* at ¶ 20 (emphasis added); *see also Rist v. N.D. Dep't of Transp.*, 2003 ND 113, ¶¶ 2, 11, 665 N.W.2d 45 (concluding community

caretaker exception applied where officer shouted "Sheriff's Department, wake up!" several times through an open window prior to reaching inside and shaking occupant); *Lapp v. N.D. Dep't of Transp.*, 2001 ND 140, ¶¶ 15-16, 632 N.W.2d 419 (applying community caretaker exception where prior to officer's opening door, security guard told officer he had unsuccessfully tried to awaken occupant for ten minutes by knocking on window, officer tapped on window twice within two minutes, and officer observed occupant's glossy eyes).

[¶13] The dissenting justices in *Bridgeford* noted, "the State must prove the officer objectively thought Bridgeford needed help." 2019 ND 153, ¶ 25 (Crothers, J., concurring in part and dissenting in part). The dissent concluded that because there was no sign of distress and "it was not incumbent on Bridgeford to communicate that he did not need or desire assistance," the officer's entry into the vehicle exceeded the community caretaking function. *Id.* at ¶¶ 25-26. The majority's conclusion that the community caretaking function applied to opening the door was based on the premise that the sleeping individual failed to respond to law enforcement's attempts to get a response from outside the vehicle. *Id.* at ¶ 20. Here, we need not revisit whether the State must show there was objective indication of a need for assistance or merely the lack of an indication there was no need for assistance because the door was opened prior to any attempt to elicit a response.

[¶14] Unlike *Bridgeford* and other precedents, the officers in this case did not attempt to get a response from Petersen from outside of the vehicle prior to opening the semi door and stepping up onto the running boards. In *Bridgeford*, the officer knocked and raised his voice for approximately 15 seconds prior to opening the door. Because the occupant did not respond during those 15 seconds, the majority viewed the officer's action of opening the door as a reasonable step in fulfilling his caretaking duty. In this case, the officer immediately opened the semi door without first attempting to elicit a response from the exterior of the semi.

[¶15] The district court concluded the opening of the semi door was "minimally intrusive" and reasonable under the circumstances, citing *United States v. Lewis*, 869 F.3d 460 (6th Cir. 2017). In *Lewis*, an officer responded to a report

5

of an intoxicated woman in a big-box retail store. *Id.* at 461. After observing signs of impairment, the officer inquired whether she was by herself. *Id.* When she responded her boyfriend was outside in his truck, the officer responded, "Well, we'll go see if your boyfriend's all right, talk to him and he can drive you out of here. You can go home." *Id.* After approaching the tinted truck, the officer saw the boyfriend asleep in the passenger seat. *Id.* Although it was disputed who opened the door, the court assumed it was one of the officers. *Id.* After the door was opened, the boyfriend tossed a baggie onto the back floorboard. *Id.* at 461-62. The baggie contained pills, which were later determined to be controlled substances. *Id.* at 462. The Sixth Circuit concluded the district court did not err in concluding the community caretaker exception applied and finding the officers' "sole purpose was to find [the woman] a safe ride home" and they "were not investigating a crime." *Id.* at 462-63. Further, the court reasoned that the opening of the door was "minimally intrusive" and "any failure to knock or attempt to speak does not make the officers' actions here unreasonable." *Id.* at 464.

[¶16] Community caretaking does not give law enforcement unfettered discretion to trespass without taking reasonable steps prior to a warrantless entry. If the officers attempted to ascertain information prior to their warrantless entry into Petersen's vehicle, they may have served a community caretaking role, depending on what information was gathered from outside the vehicle. Bypassing that necessary step under these circumstances is fatal to the caretaker exception. Again, an officer is performing a community caretaking function when "help[ing] a person in possible need of assistance." *Bridgeford*, 2019 ND 153, ¶ 8. In *Lewis*, the officers were solely engaged in finding the intoxicated shopper a ride home. Here, the complainant did not see the accident or talk with Petersen, nor did he state Petersen was in need of assistance. Likewise, the officers did not see the accident. Nor did they attempt to talk with Petersen prior to opening his vehicle. On this record, we cannot conclude the officers' actions were "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Bridgeford*, at ¶ 8. Thus, we conclude law enforcement was acting outside the scope of the community caretaking function when opening the semi door and stepping onto the running boards in an attempt to gather information

6

without first attempting to get a response from outside of the vehicle. From this unlawful intrusion into Petersen's vehicle, the officers were able to obtain information they would not otherwise have been able to obtain, such as the odor of alcohol emanating from Petersen and his bloodshot watery eyes. This warrantless trespass was an unreasonable search in violation of Petersen's constitutional rights.

IV

[¶17] The State argues that even if Petersen's rights were violated, the inevitable discovery doctrine applies to prevent suppression of evidence. The district court concluded it was unnecessary to reach this issue, having applied the community caretaker exception. The inevitable discovery doctrine "establishes that evidence derived from information obtained in an unlawful search is not inadmissible under the fruit-of-the-poisonous-tree doctrine where it is shown that the evidence would have been gained even without the unlawful action." *State v. Asbach*, 2016 ND 152, ¶ 13, 882 N.W.2d 251. We apply a two-part test:

> First, use of the doctrine is permitted only when the police have not acted in bad faith to accelerate the discovery of the evidence in question. Second, the State must prove that the evidence would have been found without the unlawful activity and must show how the discovery of the evidence would have occurred.

*State v. Holly*, 2013 ND 94, ¶ 54, 833 N.W.2d 15.

[¶18] The State argues it was not acting in bad faith, because the officers were providing assistance to Petersen. However, the State fails to argue how the evidence obtained—Petersen's identity and statements, the officer's observations, and the results of the field sobriety tests, preliminary breath test, and chemical test—would have otherwise been obtained, other than simply stating the officer "would have stopped Petersen from leaving the scene of the crash." In other words, the State does not assert how it would have legally obtained the evidence. Because the State has not met its burden under prong two by showing "how the discovery of the evidence would have occurred," we conclude the inevitable discovery doctrine does not apply.

7

## V

[¶19] We reverse the order denying suppression and the criminal judgment. Evidence obtained after law enforcement unlawfully opened Petersen's semi door must be suppressed under the exclusionary rule. *See State v. Krall*, 2023 ND 8, ¶ 12, 984 N.W.2d 669. We remand to the district court to allow Petersen to withdraw his guilty plea and for further proceedings consistent with this opinion.

[¶20] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr