# In the Iowa Supreme Court

No. 23–1075

Submitted October 10, 2024—Filed December 6, 2024

**State of Iowa,**

Appellee,

vs.

**Ashlee Marie Mumford,**

Appellant.

Appeal from the Iowa District Court for Madison County, Kevin Parker (motion to suppress) and Erica Crisp (bench trial), judges.

The defendant contends the district court erred in denying her motion to suppress evidence and challenges the sufficiency of the evidence supporting her conviction for possession of marijuana. **Affirmed.**

McDonald, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, Mansfield, and May, JJ., joined. Oxley, J., filed a dissenting opinion, in which McDermott, J., joined. McDermott, J., filed a dissenting opinion.

Colin C. Murphy of Gourley, Rehkemper & Lindholm, P.L.C., West Des Moines, for appellant.

Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney General, for appellee.

**McDonald, Justice.**

A police officer initiated a traffic stop of motorist Ashlee Mumford after the police officer was unable to read two of the numbers on the vehicle's dirt-and-grime-covered license plate. During the traffic stop, a second officer used a drug detection dog to conduct a sniff around the exterior of the stopped vehicle. In the course of the sniff around the exterior of the vehicle, the dog's paws touched the passenger door, and the dog's nose momentarily, almost imperceptibly, broke the plane of the passenger window. The dog then alerted to the presence of controlled substances. The officers searched the vehicle and found two bags of methamphetamine in the glove compartment, and they searched Mumford's purse and found marijuana and a methamphetamine pipe. Mumford was placed under arrest and charged with possession of methamphetamine, marijuana, and drug paraphernalia. Following a bench trial, Mumford was acquitted of possession of methamphetamine but convicted of possession of marijuana and drug paraphernalia. On appeal, Mumford contends the district court erred in denying her motion to suppress evidence allegedly obtained in violation of her constitutional right to be free from unreasonable searches and seizures. She challenges the sufficiency of the evidence supporting her conviction for possession of marijuana. And she claims the district court erred in denying her motion in arrest of judgment. We affirm her convictions.

I.

In the district court, Mumford moved to suppress the evidence of contraband obtained from the traffic stop and subsequent search of the vehicle and her purse. She claimed that the traffic stop and the officers' use of the drug detection dog during the traffic stop violated her federal and state constitutional rights to be free from unreasonable seizures and searches. The district court

denied the motion to suppress evidence. It concluded that the traffic stop was supported by probable cause and that use of the drug detection dog did not violate the Federal or State Constitution. Mumford contends the district court erred in denying her motion to suppress evidence. Our review is de novo. *See State v. Bauler*, 8 N.W.3d 892, 897 (Iowa 2024).

### A.

The Fourth Amendment to the Federal Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Supreme Court holds that the Fourth Amendment applies to the states and state actors via the Due Process Clause of the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *State v. Pickett*, 573 N.W.2d 245, 247 (Iowa 1997). The text of article I, section 8 of the Iowa Constitution is materially indistinguishable from the text of the Fourth Amendment. "This fact however does not compel us to follow the construction placed on the language by the United States Supreme Court." *State ex rel. Kuble v. Bisignano*, 28 N.W.2d 504, 508 (Iowa 1947). Instead, "it is our duty to independently interpret [article I,] section 8 based on its words and history[, and] [d]epending on the issue, this inquiry may lead us to conclude that section 8 provides protections that are the same as, greater than, or less than the protections provided by the Fourth Amendment." *State v. Burns*, 988 N.W.2d 352, 365 (Iowa 2023).

### B.

We first address the constitutionality of the traffic stop. The record reflects that Winterset Police Officer Logan Camp initially observed the vehicle parked at the residence of a man known to be involved in drug activity. Camp attempted to run the license plate at that time, but he could not read the last two digits of

4

the license plate because dirt and grime obscured them. Later that evening, Camp observed the same vehicle on a highway and pulled behind it. Camp still was unable to read the last two numbers on the license plate. Camp believed this was a violation of the law and initiated a traffic stop.

The " 'detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of' article I, section 8 and the Fourth Amendment." *Bauler*, 8 N.W.3d at 897 (plurality opinion) (quoting *State v. Warren*, 955 N.W.2d 848, 859 (Iowa 2021)). A traffic stop is constitutional "when supported by probable cause or reasonable suspicion of a crime." *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). "Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed" and the detained person "committed or is committing it." *Bauler*, 8 N.W.3d at 897 (plurality opinion) (quoting *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)). A peace officer's observation of a traffic violation, however minor, provides probable cause to stop a motorist. *Id.*

We conclude there was probable cause to stop the vehicle Mumford was driving. The Code provides that "[e]very registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued . . . in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible." Iowa Code § 321.38 (2022). Dirt and grime are "foreign materials" within the meaning of the statute, and if the dirt and grime render the information printed on the license plate not "clearly legible," the motorist has violated the statute. *See State v. Harrison*, 846 N.W.2d 362, 368 (Iowa 2014) ("Iowa Code sections 321.38 and

321.388 demonstrate that the legislature intended that all information to be displayed on a license plate must remain readable."); *State v. McFadden*, No. 16–1184, 2017 WL 4315047, at *2 (Iowa Ct. App. Sept. 27, 2017) ("A dirty plate constitutes a traffic violation. The violation [of section 321.38] afforded the officers probable cause to stop the vehicle." (citation omitted)); *State v. Klinghammer*, No. 09–0577, 2010 WL 200058, at *3 (Iowa Ct. App. Jan. 22, 2010) (holding that snow accumulation provided probable cause to stop a vehicle for a section 321.38 violation because the license plate was not "clearly legible"); *State v. Miller*, No. 02–0965, 2003 WL 22015974, at *1 (Iowa Ct. App. Aug. 27, 2003) ("[W]e conclude the obscured license plate alone furnished probable cause for the vehicle stop.").

Mumford does not contest the legal conclusion, but she does contest the facts. She contends that the videos of the traffic stop and still photos taken from the videos show that the entirety of the rear license plate was clearly visible and clearly legible. We disagree. The videos and still shots are not clear, at all. Further, the videos and still shots taken from several feet away from the vehicle are not particularly relevant. The videos and photos show the vehicle "at close range at a dead stop." *State v. Griffin*, 997 N.W.2d 416, 420 (Iowa 2023). The videos and photos do not "show what the [vehicle] looked like at highway speeds" at night. *Id.* at 420–21. The videos do not show what Officer Camp "saw or could have seen when [he] made [his] decision to stop" Mumford. *Id.* at 421. Camp testified that he could not read the last two digits of the license plate from a couple of car lengths behind the vehicle. Like the district court, we credit his testimony and find he observed a violation of Iowa Code section 321.38 prior to initiating the traffic stop.

Even if Camp had probable cause to stop the vehicle, Mumford asserts that Camp's detention of her was nonetheless unlawful because Camp admittedly could read the last two digits of the license plate when he walked up to her vehicle and shined his flashlight on the license plate. According to Mumford, once Camp was able to read the last two digits on the license plate, Camp was obligated to walk away and let Mumford go without any further interaction. We recently rejected the same argument in *State v. Griffin. See id.* In that case, a peace officer initiated a traffic stop after observing a vehicle with a license plate cover that did not permit full view of the letters and numerals printed on the plate, in violation of Iowa Code section 321.37. *Id.* at 419. After initiating the stop, the officers were able to observe the letters and numerals printed on the plate. *Id.* at 421. The defendant contended the officers were then obligated to drive away without any further interaction. *Id.* We rejected the argument. *Id.* "The violation occurred" when the peace officers observed the violation from the road and "was complete well before Griffin's vehicle stopped." *Id.* At that point, the peace officers could have ticketed the motorist or issued a warning. *Id.* In either case, the peace officers "were fully justified in approaching the driver's-side door and talking with" the motorist. *Id.* The same holds true here. *See also State v. Peden,* No. 08–1039, 2009 WL 606236, at *1 (Iowa Ct. App. Mar. 11, 2009) ("A license plate that is legible only from certain angles does not comply with [section 321.38] requirements.").

Mumford suggests that the traffic stop nonetheless should be deemed unconstitutional because the traffic stop was merely a pretext for drug interdiction. She argues Officer Camp observed the vehicle parked at a known drug house and was merely looking for a reason to pull the vehicle over and search for drugs. Even if this were Camp's true motivation, the true "motivation

of the officer stopping the vehicle is not controlling in determining whether" probable cause existed. *State v. Brown*, 930 N.W.2d 840, 847 (Iowa 2019) (quoting *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002)). Instead, "[t]he existence of probable cause for a traffic stop is evaluated 'from the standpoint of an objectively reasonable police officer.' " *Id.* at 855 (quoting *State v. Tyler*, 830 N.W.2d 288, 293–94 (Iowa 2013)). An officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis" or article I, section 8 analysis. *Id.* at 845 (alteration in original) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)).

## C.

The more contentious issue in this case is whether use of the drug dog to conduct an exterior sniff of a lawfully stopped vehicle was an unlawful search in violation of the Fourth Amendment or article I, section 8 of the Iowa Constitution. The record shows that around the same time Camp initiated the traffic stop, he contacted Winterset Police Officer Christian Dekker to assist. Dekker was the K-9 handler for the Winterset Police Department. Dekker arrived at the scene only shortly after Camp initiated the traffic stop. Camp and Dekker intended to conduct a dog sniff around the exterior of the vehicle, and they asked Mumford and her passenger to exit the vehicle for their own safety. Mumford and her passenger complied, although not without some objection. Mumford exited the vehicle with her purse in her possession. Mumford's passenger left the passenger window down when he exited the vehicle. Dekker walked the drug dog around the exterior of the vehicle. The entire examination lasted approximately fifteen to twenty seconds. Dekker started on the driver's side of the vehicle, proceeded to the rear of the vehicle, and then proceeded to the front passenger door. The dog stood on its hind legs and placed its front paws on the passenger door. The dog's

snout briefly, almost imperceptibly, crossed the plane of the passenger window and entered the cabin of the vehicle. Dekker admitted this at the hearing on the motion to suppress. He testified, "I believe his nose went inside the vehicle, yes, through an open window that the passenger had left open." Dekker maintained the dog's behavior was instinctual and that Dekker did nothing to encourage it. After the dog's nose entered the vehicle, the dog alerted to the presence of controlled substances. A subsequent search of the vehicle revealed two bags of methamphetamine in the glove compartment, and a search of Mumford's purse, which she had taken with her from the vehicle, revealed marijuana and a methamphetamine pipe. Mumford claims that the drug dog's brief touch of the passenger door and brief cross of the plane of the passenger window constituted a trespass and rendered the search unconstitutional.

*State v. Bauler*, 8 N.W.3d 892, largely controls our resolution of Mumford's claims. In that case, the majority of this court held that a drug dog's quick, incidental touch of the exterior of a vehicle in a public place during a lawful traffic stop did not violate the Fourth Amendment or article I, section 8. *See id.* at 902 (plurality opinion) ("We find the dog sniff of Bauler's vehicle did not violate the Fourth Amendment, notwithstanding the brief touching of the exterior of the vehicle."), *id.* at 907 (stating that "the dog sniff of Bauler's vehicle did not violate article I, section 8"); *id.* at 913 (McDonald, J., concurring specially) (stating that "momentary touching of Bauler's vehicle in a public place during a lawful traffic stop was not unlawful, tortious, or otherwise prohibited under Iowa law" and that there was thus "no obligation to obtain a search warrant prior to conducting the search" under the Iowa Constitution and rejecting Fourth Amendment claim). The same rationales apply here with respect to the drug dog's placement of its paws on the passenger door.

The question not presented or answered in *Bauler* was whether it would make a difference if the drug dog's nose crossed the plane of an open window and entered the cabin of the vehicle. *See id.* at 907 n.8 (plurality opinion) ("We do not decide whether a dog sniff wherein a dog has been previously trained to put its head inside the car and in fact does so has violate[d] the Fourth Amendment or article I, section 8.").

Other courts have addressed the issue of whether a K-9 unit's entry into the cabin of a vehicle constituted an unconstitutional search. Those courts have come to different conclusions under a variety of rationales. *See, e.g., United States v. Wilson*, No. 22–20100, 2024 WL 3634199, at *2 & n.1 (5th Cir. Aug. 2, 2024) (per curiam) (holding that there was no search where dog instinctively entered cabin without direction and collecting cases); *United States v. Pulido-Ayala*, 892 F.3d 315, 318–19 (8th Cir. 2018) (concluding that officers had probable cause to search the vehicle prior to K-9's entry into vehicle cabin); *United States v. Pierce*, 622 F.3d 209, 214–15 (3rd Cir. 2010) (finding no Fourth Amendment violation); *United States v. Handley*, No. 23–CR–57–CJW–MAR, 2024 WL 1536750, at *6–7 (N.D. Iowa Apr. 9, 2024) (discussing caselaw); *United States v. Corbett*, 718 F. Supp. 3d 537, 561 (S.D.W. Va. 2024) (same); *United States v. Buescher*, 691 F. Supp. 3d 924, 936–37 (N.D. Iowa 2023) (same).

After reviewing these cases and other relevant authorities, we conclude that a drug dog's momentary breach into the cabin of a vehicle through an open window of a legally stopped vehicle does not require the suppression of evidence under either the Fourth Amendment or article I, section 8. With respect to the Fourth Amendment, *Illinois v. Caballes*, 543 U.S. 405 (2005), remains the controlling case. *See Bauler*, 8 N.W.3d at 902 (plurality opinion) (explaining that *Caballes* is controlling on the Fourth Amendment question). In *Caballes*, the

Supreme Court held that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." 543 U.S. at 410. We are bound to follow *Caballes.*

We are also bound to follow the Supreme Court's jurisprudence regarding the federal exclusionary rule. "To trigger the exclusionary rule, police conduct must be . . . sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States,* 555 U.S. 135, 144 (2009). The exclusionary rule was intended to deter "deliberate, reckless, or grossly negligent conduct." *Id.* This case does not involve deliberate, reckless, or grossly negligent conduct. Here, the officers used a drug dog to conduct an exterior sniff of the vehicle, a practice which the Supreme Court explicitly approved in *Caballes. See* 543 U.S. at 410. The drug dog's fleeting touch of the passenger door and *de minimis* intrusion into the vehicle cabin through a window left open by a passenger does not justify the exclusion of evidence under the Supreme Court's Fourth Amendment jurisprudence. *See, e.g., United States v. Lyons,* 486 F.3d 367, 373–74 (8th Cir. 2007) (affirming denial of motion to suppress where K-9 unit breached cabin of vehicle through open window and there was no evidence that peace officers opened the window or directed the window to be opened); *Handley,* 2024 WL 1536750, at *9 (denying motion to suppress where K-9's head entered window and concluding that suppression was not required because "this conduct is not culpable enough to trigger the harsh sanction of exclusion").

On the state constitutional claim, the *de minimis* crossing of the drug dog's nose into the open window of the vehicle is of no constitutional import under either of the rationales that sustained the outcome in *Bauler. See* 8 N.W.3d at 906 (plurality opinion); *id.* at 911 (McDonald, J., concurring specially). The law

affords less protection for intrusion into or upon vehicles on the road than intrusions into the home. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001) (" 'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961))); *California v. Carney*, 471 U.S. 386, 393 (1985) (noting a "reduced expectation of privacy" in vehicles); *State v. Reinier*, 628 N.W.2d 460, 464 (Iowa 2001) (en banc) ("It is axiomatic that the chief evil sought to be addressed by the Fourth Amendment was the physical entry of the home."). The drug dog's almost imperceptible entry into the open window of the vehicle cabin took place in the open air and did not go beyond the normal scope of a dog sniff. *See Bauler*, 8 N.W.3d at 906 (plurality opinion). Nor did it create any further intrusion into the motorist's expectation of privacy in the vehicle or any cognizable legal injury that required the legal justification of a search warrant. *See id.* at 911 (McDonald, J., concurring specially). The Iowa Constitution does not require the exclusion of evidence obtained as a result of a fleeting entry of a drug dog's nose into the open cabin of a lawfully stopped vehicle.

### D.

In sum, Camp had probable cause to initiate a traffic stop of the vehicle based on his observation of a completed violation of Iowa Code section 321.38. Upon making that traffic stop, Camp had continued authority to interact with Mumford; check for her license, registration, and proof of insurance; and process a citation or issue a warning. While Mumford was lawfully detained, Dekker used a drug dog to conduct a free air sniff around the exterior of the vehicle without a search warrant, which the Supreme Court and this court have deemed permissible. Neither the Fourth Amendment nor article I, section 8 requires the

suppression of evidence obtained as a result of a vehicle search predicated on probable cause (established by the drug dog's alert to the presence of controlled substances), even where the drug dog fleetingly touched the vehicle and made a *de minimis* intrusion into the cabin of the vehicle through an open window. The district court did not err in denying Mumford's motion to suppress evidence.

## II.

This case was tried to the district court rather than a jury. As noted above, the district court acquitted Mumford of possession of methamphetamine but convicted her of possession of marijuana and drug paraphernalia. Mumford challenges the sufficiency of the evidence supporting her conviction for possession of marijuana. Mumford does not contest that she was in possession of a green, leafy substance the officers identified as marijuana. Instead, she challenges whether there was sufficient evidence to show the green, leafy substance was in fact marijuana. She insists the State must introduce evidence from a laboratory showing that the substance was in fact marijuana. She believes such evidence is required now because of recent changes to the law allowing the possession of hemp.

The primary case on which Mumford relies is *State v. Brubaker*, 805 N.W.2d 164 (Iowa 2011), *abrogated on other grounds by State v. Crawford*, 972 N.W.2d 189, 197–98 (Iowa 2022). In *Brubaker*, this court reversed a judgment for unlawful possession of a prescription drug, Clonazepam, for want of sufficient evidence of the identity of the drug. *Id.* at 174. In that case, the state did not test the pills found in the defendant's possession but instead relied on an expert to compare the pills found in the defendant's possession to pictures of Clonazepam. *Id.* at 172–73. We noted several deficiencies in the state's case. The expert did not testify that the pills were in fact Clonazepam but only that the

pills were consistent in appearance with Clonazepam. *See id.* at 173–74. However, the pills bore no distinctive marks and were "similar in size, shape, and consistency to aspirin and other over-the-counter drugs readily available without a prescription." *Id.* at 173. The pills were found in a generic bottle with "no label or other indication of the identity of its contents." *Id.* We concluded that "[t]he fact that the pills appear to be Clonazepam and that the officers found them under the back seat is insufficient to establish they were, in fact, Clonazepam." *Id.*

*Brubaker* provides little support for Mumford's challenge to the sufficiency of the evidence here. Contra to Mumford's contention, *Brubaker* does not stand for the proposition that lab testing is always required to establish the identity of a controlled substance. It merely stands for the proposition that the state must present sufficient evidence to establish the identity of a controlled substance, whether direct or circumstantial. *See id.* As we explained in *Brubaker*, "[w]e have always recognized that, for a person to be convicted of a drug offense, the State is not required to test the purported drug." *Id.* at 172 (citing *In re C.T.*, 521 N.W.2d 754, 757 (Iowa 1994)). "The identity of a substance as an illegal drug may be proved by circumstantial evidence." *In re C.T.*, 521 N.W.2d at 757. "The reason for this rule is that circumstantial evidence is not inferior to direct evidence." *Brubaker*, 805 N.W.2d at 172. In *Brubaker*, we then identified a variety of circumstances that would support a finding that a substance was an illegal drug in the absence of testing, including "the physical appearance of the substance involved in the transaction," "evidence that the substance was called by the name of the illegal narcotic by the defendant or others in [her] presence," and "whether the known odor of the substance identified it as an illegal drug." *Id.* at 173 (quoting *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976)).

However, those examples "[were] not exclusive, and the state is not required to prove all of these circumstances . . . to sustain a conviction." *Id.*

Unlike in *Brubaker*, the State did present sufficient circumstantial evidence to prove beyond a reasonable doubt that the substance in Mumford's possession was marijuana. Camp testified that he was a certified drug recognition officer. Mumford stipulated to Camp's credentials and qualifications. Camp testified that the substance found in Mumford's purse was marijuana. *See State v. Silva*, No. 11–1336, 2012 WL 3195994, at *4 (Iowa Ct. App. Aug. 8, 2012) (holding that evidence was sufficient to support conviction where officer testified he "recognized the green leafy substance in the baggie as raw marijuana"); *see also United States v. Durham*, 464 F.3d 976, 984–85 (9th Cir. 2006) (holding that the "government need not introduce scientific evidence to prove the identity of a substance so long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable [doubt]" and collecting cases (alteration in original)); *In re Ondrel M.*, 918 A.2d 543, 546 n.6 (Md. Ct. Spec. App. 2007) (stating that "there is authority, from both federal and state courts, that the testimony of a witness, who is familiar with marijuana through past experience, that the substance in question was marijuana, is admissible into evidence to support a finding that the accused was in possession of marijuana," and citing cases). Camp's testimony was confirmed in two respects by contemporaneous bodycam footage. First, the footage showed, at the time of the search, Camp quickly identified the green, leafy substance found in Mumford's purse as "weed," a common slang term for marijuana. Second, the substance itself was clearly visible and had the distinctive look of marijuana. *See Commonwealth v. Wilkins*, No. 621 MDA 2013, 2014 WL

11015648, at *4 (Pa. Super. Ct. Jan. 9, 2014) ("[T]he incriminating nature of the marijuana was immediately apparent.").

Mumford raises one final contention. She argues that there is insufficient evidence to support her conviction because the State failed to disprove the green, leafy substance found in her purse was legal hemp. We disagree. Mumford never raised this issue at trial, and, in any case, "the State is not required to negate any and all rational hypotheses of the defendant's innocence." *State v. Jones*, 967 N.W.2d 336, 342 (Iowa 2021). A federal circuit court recently rejected a similar argument:

> Contrary to Rivera's argument, the government did not need to prove this fact. By excluding hemp from the definition of marijuana, the Farm Bill carved out an *exception* to marijuana offenses: Someone with cannabis possesses marijuana *except* if the cannabis has a THC concentration of 0.3% or less. The government need not disprove an exception to a criminal offense unless a defendant produces evidence to put the exception at issue. Because Rivera did not put the hemp exception at issue, the government bore no burden to prove that it was inapplicable. We will therefore affirm the District Court's judgment of conviction.

*United States v. Rivera*, 74 F.4th 134, 136 (3d Cir. 2023) (footnote omitted). We agree with the analysis in *Rivera.*

In a criminal case tried to the district court rather than a jury, the district court's "findings of fact have the effect of a special verdict, *see* Iowa R. App. P. 6.907, and are binding on us if supported by substantial evidence." *State v. Fordyce*, 940 N.W.2d 419, 425 (Iowa 2020). In determining whether there is substantial evidence in support of the district court's findings and verdict, "we view the evidence in the light most favorable to the State." *Id.* Here, when the evidence is viewed in the light most favorable to the district court's findings and verdict, there is substantial evidence supporting Mumford's conviction for possession of marijuana.

III.

After the district court issued its findings and verdict, Mumford filed a motion in arrest of judgment. Her motion in arrest of judgment challenged the sufficiency of the evidence supporting her conviction for possession of marijuana on the same grounds discussed above. The district court denied the motion. Mumford contends the district court erred or abused its discretion in denying Mumford's motion in arrest of judgment. We disagree. "A motion in arrest of judgment may not be used to challenge the sufficiency of evidence." *State v. Dallen*, 452 N.W.2d 398, 399 (Iowa 1990); *see also State v. Oldfather*, 306 N.W.2d 760, 762 (Iowa 1981) (stating that a motion in arrest of judgment cannot be used to challenge the sufficiency of the evidence); *State v. Moore*, No. 18–0755, 2019 WL 1486604, at *3 n.7 (Iowa Ct. App. Apr. 3, 2019) ("Iowa Rule of Criminal Procedure 2.24(3) does not permit a challenge to the sufficiency of the evidence in a motion in arrest of judgment."); *State v. Wetter*, No. 17–1418, 2018 WL 5839941, at *1 n.2 (Iowa Ct. App. Nov. 7, 2018) ("A motion in arrest of judgment may not be used to challenge the sufficiency of evidence." (quoting *Oldfather*, 306 N.W.2d at 762)); *State v. Howard*, No. 16–1990, 2017 WL 4049524, at *3 n.3 (Iowa Ct. App. Sept. 13, 2017) (stating the same). Accordingly, the district court did not err in denying the motion in arrest of judgment.

IV.

The district court did not err in denying Mumford's motion to suppress evidence. The evidence, when viewed in the light most favorable to the district court's verdict, is sufficient to establish Mumford was in possession of marijuana. The district court did not err in denying Mumford's motion in arrest of judgment challenging the sufficiency of the evidence.

**Affirmed.**

Christensen, C.J., and Waterman, Mansfield, and May, JJ., join this opinion. Oxley, J., files a dissenting opinion, in which McDermott, J., joins. McDermott, J., files a dissenting opinion.

**Oxley, Justice (dissenting).**

The majority continues to hide behind *Illinois v. Caballes*, 543 U.S. 405, 409 (2005), even though its *Katz*-based holding "is irrelevant to" a property-based Fourth Amendment challenge. *State v. Bauler*, 8 N.W.3d 892, 913 (Iowa 2024) (Oxley, J., dissenting); *see also Florida v. Jardines*, 569 U.S. 1, 11 (2013) ("The *Katz* reasonable-expectations test . . . is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas."); *United States v. Jones*, 565 U.S. 400, 409 (2012) ("[T]he *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test." (alteration in original)).

*Caballes* has even less to say in this case where Orozco, the drug dog, did not alert until after breaking the plane of the passenger window and putting his nose *inside* the vehicle. *See State v. Randall*, 496 P.3d 844, 853 (Idaho 2021) ("Though the Supreme Court has not directly addressed the question, *Jones* and *Jardines* make clear that a drug dog's trespass into a car during an exterior sniff converts what would be a non-search under *Caballes* into a search."). *Caballes* did not involve the interior of a vehicle. Rather, it merely approved of a "free air sniff," which the Supreme Court has described as "an *exterior* sniff of an automobile [that] does not require entry into the car," where the dog "simply walks around a car." *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000) (emphasis added) (describing a free air sniff used at a checkpoint found to be unconstitutional); *see also State v. Bergmann*, 633 N.W.2d 328, 334–35 (Iowa 2001) ("[W]e are persuaded by the following long-standing viewpoint. 'Having the trained dog sniff the *perimeter* of [defendant's] vehicle . . . did not of itself constitute a search.' '[T]he airspace *around the car* is not an area protected

by the Fourth Amendment.'" (second and third alteration in original) (emphasis added) (first quoting *United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994); and then quoting *Casey v. State*, 542 S.E.2d 531, 535 (Ga. Ct. App. 2000))).

Even the State recognizes that this appeal "presents a distinct 'interior sniff' component of . . . Fourth Amendment jurisprudence." Nonetheless, the majority refuses to address the distinction between the interior and exterior of a vehicle. I respectfully dissent from its conclusion that Mumford's Fourth Amendment rights were not violated.

I.

In *State v. Bauler*, a majority of our court concluded that a drug dog's "[m]inimal contact with the exterior of a vehicle" does not violate the Fourth Amendment. 8 N.W.3d at 900 (plurality opinion); *id.* at 913 (McDonald, J., concurring specially). The plurality explicitly conditioned its Fourth Amendment holding: "so long as there was no entry into the private space inside the vehicle." *Id.* at 895. Faced with that exact scenario here, the majority now dismisses the property-based challenge by characterizing the drug dog's actions as involving an "almost imperceptible entry into the open window of the vehicle."

But that distinction is critical in Fourth Amendment jurisprudence. "The inside of a car . . . is typically a different story. Police ordinarily cannot search the interior of an automobile unless they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. Pulido-Ayala*, 892 F.3d 315, 317–19 (8th Cir. 2018) (concluding that probable cause to search the vehicle existed "*before* the [drug] dog entered the interior" based on the drug dog "immediately" pulling the canine officer toward the open passenger door such that there was no unlawful search when the dog jumped

into the defendant's vehicle); *see also United States v. Ngumezi*, 980 F.3d 1285, 1289 (9th Cir. 2020) ("Although the intrusion here may have been modest, the Supreme Court has never suggested that the magnitude of a physical intrusion is relevant to the Fourth Amendment analysis. . . . [W]e apply a bright-line rule that opening a door and entering the interior space of a vehicle constitutes a Fourth Amendment search.").

Rather than tackle that question, the majority here continues to hide behind *Caballes* even where federal courts do not. *See, e.g., United States v. Newberry*, No. 24–CR–1026–LTS, 2024 WL 4590159, at *13–17 (N.D. Iowa Oct. 28, 2024) (finding that "the Government conducted a warrantless and unreasonable search of Defendant's vehicle" when a drug dog's nose and head entered the open driver's window); *United States v. Handley*, No. 23–CR–57–CJW–MAR, 2024 WL 1536750, at *6–7 (N.D. Iowa Apr. 9, 2024) (concluding that the defendant's Fourth Amendment rights were violated when a drug dog stuck its nose inside a vehicle—breaking the plane of the driver's window by four to six inches—before alerting, and noting the "important distinction between cases where the government has probable cause to search a vehicle *before* a dog enters the interior of a vehicle, based on the dog's strong reactions while outside the vehicle, and cases where the dog gives no strong reaction or final indication until *after* entering the interior of the vehicle," as discussed by the Eighth Circuit in *Pulido-Ayala*); *United States v. Buescher*, 691 F. Supp. 3d 924, 936 (N.D. Iowa 2023) ("While some courts have found no Fourth Amendment violation when a drug-sniffing dog breaks the plane of an open window, those decisions were largely prior to *Jones* and *Jardines*."); *United States v. Joshua*, 564 F. Supp. 3d 860, 877 (D. Alaska 2021) ("[The] K-9 put her paws inside the door of the Porsche and extended the upper half of her body into

the vehicle. The K-9 then alerted to the scent of controlled substances. The search exceeded the scope of a *Terry* stop and amounted to an illegal search."); *see also Randall*, 496 P.3d at 856 ("[T]hough an exterior sniff of a car is not a search under *Caballes*, it becomes a search under *Jones* when a drug dog trespasses into the car's interior."); *State v. Organ*, 697 S.W.3d 916, 919–21 (Tex. App. 2024) (holding that a drug dog's "interior sniff of [defendant's] car violated [his] Fourth Amendment rights" under a physical-intrusion analysis after recognizing that the "six federal appellate courts" that had "concluded that a dog's entry into a vehicle . . . did not implicate the Fourth Amendment" were either "decided before or did not discuss" *Jones* and *Jardines*); *State v. Campbell*, 5 N.W.3d 870, 876–79 (Wis. Ct. App. 2024) (applying *Jones* and *Jardines* to conclude that the defendant "had a property interest in the interior of her vehicle under the common-law trespassory test" and that her Fourth Amendment rights were violated when a drug dog alerted after entering her vehicle despite the Wisconsin Supreme Court's prior reliance on *Caballes* to conclude that an occupant of a vehicle has no expectation of privacy in the air space around a vehicle).

That Orozco's entry inside the vehicle here was "almost imperceptible" is of no moment. *See State v. Wright*, 961 N.W.2d 396, 413–14 (Iowa 2021) ("A constitutional search occurs whenever the government commits a physical trespass against property, even where de minimis, conjoined with 'an attempt to find something or to obtain information.' " (quoting *Jones*, 565 U.S. at 408 n.5)). Officer Dekker testified that the drug dog's "nose went inside the vehicle . . . through an open window" on the passenger side, a point the State concedes on appeal. As the majority notes, it was not until "[a]fter the dog's nose entered the vehicle[ that] the dog alerted to the presence of controlled

substances." Officer Dekker could not have stuck his own head into the interior space of Mumford's vehicle to smell for drugs without violating the Fourth Amendment. *See, e.g., United States v. Montes-Ramos*, 347 F. App'x 383, 388 (10th Cir. 2009) (holding that a police officer who leaned his head approximately two inches into the defendant's car and sniffed for marijuana engaged in a search even if it was minimal because "[t]he fact that the intrusion was minimal does not affect the analysis"); *United States v. Ryles*, 988 F.2d 13, 15 (5th Cir. 1993) (holding that an officer who "pierced the airspace inside the vehicle" when he leaned inside an open window and smelled burnt marijuana engaged in a search for Fourth Amendment purposes); *Buescher*, 691 F. Supp. 3d at 939 ("Kerr himself would not have been constitutionally permitted to enter the vehicle without a warrant. Similarly, K-9 Gus' entry into the open window was a trespass with an intent to obtain information." (citation omitted)); *United States v. Francisco Estrella*, 2021 WL 413513, at *13 (D. Conn. Feb. 5, 2021) ("Putting [the officer's] hand and arm inside Mr. Francisco-Estrella's vehicle to photograph its contents is no different than an officer putting his head inside a vehicle to smell its contents."); *see also State v. Petersen*, 994 N.W.2d 410, 416 (N.D. 2023) (holding that the officer engaged in an unreasonable search under the Fourth Amendment by "opening the semi door and stepping onto the running boards," where, "[f]rom this unlawful intrusion into Petersen's vehicle, the officers were able to obtain information they would not otherwise have been able to obtain, such as the odor of alcohol emanating from Petersen and his bloodshot watery eyes"); *cf. United States v. Aguirre*, No. 1:23–CR–00187–DCN, 2024 WL 4434281, at *7 (D. Idaho Oct. 7, 2024) (concluding that a vehicle search was reasonable and constitutionally permissible because the officer did not break the plane of the car's interior and recognizing a distinction between an exterior search of a

vehicle and "entering the interior space of a vehicle" as discussed by the Ninth Circuit in *Ngumezi* (emphasis omitted)). Orozco, as Officer Dekker's instrumentality, could not do what the officer could not do himself. *See Pulido-Ayala*, 892 F.3d at 318 ("A drug dog is an instrumentality of the police . . . .").

## II.

Nor is this a case where the drug dog's actions could be considered "instinctual," to the extent that distinction matters. *See Randall*, 496 P.3d at 853–55 (discussing cases distinguishing between a drug dog being encouraged to enter a vehicle and instinctually doing so and holding "that [the drug dog's] motivation, instinctual or otherwise, is irrelevant[ because t]he proper inquiry is whether [the officer] had probable cause to believe illegal drugs were in [the defendant's] car before [the drug dog] jumped through the window"). Officer Dekker gave Orozco a trained command to conduct a "scan search"—i.e., Officer Dekker encouraged the dog to search the entire vehicle, giving it full range to search Mumford's vehicle, including by jumping up on both sides of the vehicle and sticking its head into the open window as it was trained to do in performing a scan search. Indeed, while actively engaged in that pursuit, Orozco exhibited a "high final" alert in this case by "stand[ing] high and look[ing] at" Officer Dekker immediately *after* sticking his nose through the window and while his feet were still on the side of the car. Orozco did as he was trained to do.

## III.

Finally, the majority ducks the hard work by suggesting we are bound by the federal exclusionary rule in any event. But exclusion is proper under federal law if the drug dog acted on its training, as happened here. *See Handley*, 2024 WL 1536750, at *9 (distinguishing *Buescher*, which excluded evidence

obtained following the dog's entry into the vehicle, on the basis that "the drug-sniffing dog in that case was trained to enter the open windows of vehicles"); *see also Jardines*, 569 U.S. at 5 (affirming the Florida Supreme Court's exclusion of evidence obtained by warrant determined to be invalid because it was based on a drug dog's alert at the defendant's front door, in violation of the Fourth Amendment). It is not a basis for avoiding the Fourth Amendment analysis.

I would hold that Mumford's Fourth Amendment rights were violated and that the district court erred in denying her motion to suppress evidence obtained following the drug dog's alert.

McDermott, J., joins this dissent.

**McDermott, Justice (dissenting).**

Mumford argues that her search-and-seizure protections under both the United States Constitution and the Iowa Constitution were violated when a police dog climbed onto the side of her vehicle and thrust its head into the passenger compartment to sniff for drugs. On the challenge under the federal constitution, I join Justice Oxley's dissent and would hold that the search violated the Fourth Amendment. On the challenge under our state constitution, which Justice Oxley does not address, I would hold that the search also violated article I, section 8 of the Iowa Constitution.

We interpret the Iowa Constitution independent of the Supreme Court's interpretation of the United States Constitution, even when provisions of the two constitutions contain nearly identical language. *State v. Brown*, 890 N.W.2d 315, 322 (Iowa 2017). As a result, provisions in the Iowa Constitution may offer greater or lesser protection than comparable provisions in the United States Constitution. *State v. Wright*, 961 N.W.2d 396, 403–04 (Iowa 2021). On questions involving the Iowa Constitution, the supreme court in Iowa, not Washington, has the final word on its interpretation. *See McClure v. Owen*, 26 Iowa 243, 249 (1868).

Article I, section 8 of the Iowa Constitution states:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.

This language divides the analysis into four questions: (1) Is the subject of the alleged intrusion a person, house, paper, or effect? (2) If so, was it searched or seized? (3) If so, was it the defendant's ("their") pferson, house, paper, or effect?

(4) If so, was the search or seizure unreasonable? *See* Orin S. Kerr, Katz *as Originalism*, 71 Duke L.J. 1047, 1052 (2022).

In *State v. Wright*, we examined whether the police officer's conduct in accessing the defendant's trash bin violated positive law—meaning some existing enacted law or legal doctrine recognized by courts—to determine whether the officer infringed the defendant's rights under article I, section 8. 961 N.W.2d at 416–17. A municipal ordinance made it a crime for anyone other than a licensed trash collector to access a trash bin set out for collection. *Id.* at 417. In our analysis of the reasonableness of the search, we considered whether the existence of the ordinance meant that the officer had committed a trespass when he accessed the trash bin on the defendant's property without a warrant. *Id.* at 416. People may reasonably expect that an officer will not engage in conduct that is "unlawful, tortious, or otherwise prohibited" regarding their "persons, houses, papers and effects." *Id.*; Iowa Const. art. I, § 8. We thus held that the officer violated the defendant's reasonable expectation of privacy when the officer committed a trespass to access the trash bin. *Wright*, 961 N.W.2d at 419.

The appeal in this case comes on the heels of another case in which we analyzed whether a vehicle search involving a police dog violated the Iowa Constitution. In *State v. Bauler*, a split majority of our court found no violation of article I, section 8 despite the officer enabling the police dog to climb with its front two paws onto the vehicle's side paneling to sniff for drugs. 8 N.W.3d 892, 902–07 (Iowa 2024) (plurality opinion). A three-justice plurality contended that our holding in *Wright* did not apply to "dog sniff" cases at all, which the plurality deemed "sui generis" because a drug dog detects only contraband. *Id.* at 906. Three other justices, in a special concurrence, accused the plurality of trying "to walk back this court's analysis in *Wright*." *Id.* at 909 (McDonald, J., concurring

specially). These specially concurring justices applied *Wright*'s analysis but concluded that the police dog's climb onto the side of the vehicle was nonetheless constitutional. *Id.* at 912–13.

I dissented in *Bauler*, having concluded both that *Wright*'s analysis applies to vehicle searches and that the officer's conduct permitting the police dog to climb onto the side of the vehicle to sniff constituted a physical trespass that made the search unconstitutional. *Id.* at 924 (McDermott, J., dissenting). Under the common law, a person commits a "trespass to chattel" when the person unlawfully "intermeddles" with another's personal property. *See* Restatement (Second) of Torts § 217 cmt. *e*, at 417, 419 (Am. L. Inst. 1965). To "intermeddle" with another's personal property is to "intentionally bring[] about a physical contact" with the property. *Id.* at 417. When the officer guided the police dog to climb up onto the side of the vehicle, the officer "intermeddled" with Bauler's personal property and thus committed a trespass. *See State v. Dorff*, 526 P.3d 988, 997–98 (Idaho 2023). Whether the property owner could or would sue for the trespass is immaterial for purposes of determining the relative rights of the parties under article I, section 8. *See id.* at 996. The trespass on Bauler's "effect" (the vehicle) violated a reasonable expectation of privacy. *See Bauler*, 8 N.W.3d at 927 (McDermott, J., dissenting).

Because the officer in *Bauler* had no warrant, and no recognized exception to the warrant requirement applied, I would have held that the district court erred in failing to exclude the fruits of the improper search under the Iowa Constitution. Although the three-justice plurality in *Bauler* disagreed about whether *Wright* applied, it agreed with this trespass analysis and what it would mean in the case, concluding that "[i]f *Wright* is applied, the dog sniff here does not survive." *Id.* at 905–06 (plurality opinion).

The analytical groupings in *Bauler* are worth highlighting. Four justices (the three-justice plurality and me) concluded that if *Wright*'s property-rights-based analysis applied to dog-sniff cases, then the police dog's climb onto the side of the vehicle constituted a trespass. *Id.*; *id.* at 926–27 (McDermott, J., dissenting). Four justices (the three specially concurring justices and me) concluded that *Wright*'s analysis did in fact apply to the case. *Id.* at 909 (McDonald, J., concurring specially) ("*Wright* is a controlling framework for evaluating claims arising under article I, section 8 . . . ."); *id.* at 926 (McDermott, J., dissenting). This means, curiously, that numerical majorities on this court would have concluded that *Wright* applied and that the State violated Bauler's search-and-seizure protections under *Wright*.

The facts in this case are materially identical to *Bauler*—only more egregious. We left open the question in *Bauler* about "whether a dog sniff wherein a dog has been previously trained to put its head inside the car and in fact does so has violate[d] the Fourth Amendment or article I, section 8." *Id.* at 907 n.8 (plurality opinion). In this case, we now have the police dog not only climbing up and placing its paws on the vehicle, but a step beyond, with the dog also plunging its head through the open window and into the passenger compartment.

The majority finds all this climbing, pawing, and plunging by police dogs onto and into cars "of no constitutional import." I doubt many car owners would agree. The sight of a dog propped up on the side of one's car, literally pawing its panels to gain position as it noses the car's crevices and crannies, presents an alarming picture. More importantly, it constitutes an illegal trespass. That trespass expands further when a police dog also thrusts its head into the passenger compartment. Until today, we had only sanctioned a police dog's sniffs of the free air *outside* a vehicle. *See State v. Bergmann*, 633 N.W.2d 328, 334–35

(Iowa 2001). The air *inside* a vehicle's cabin is in no sense "free" air—a point made obvious when a police dog needs to insert its head into the cabin to take it in. Despite the majority's repeated attempts to minimize the intrusive conduct here, most drivers, I suspect, would find the prospect of a police dog with its paws up on their door panel and its snout in their passenger compartment a significant, distressing, and embarrassing invasion.

Equally worrisome, in pondering the majority's approval today of this further incursion on the rights of citizens in vehicles, I struggle to find any limiting principle. May a police dog climb completely onto the hood or trunk or roof on all four legs to sniff about? Or, to twist the line in George Orwell's *Animal Farm*, are two legs good but four legs bad? On what rationale would such a distinction rest after today? And may police now direct their dogs to climb completely inside the passenger compartment too? On this question, if a police dog's actual searching tool—its nose—presents no constitutional problem inside a car, why would the rest of its body? Having now approved as constitutional what four justices of this court would agree *is in fact a trespass*, I fail to see how the court in a future case draws any line to find police dog searches involving a vehicle unconstitutional.

But unconstitutional it certainly is. The target of the search—Mumford's car—is an "effect." *See United States v. Jones*, 565 U.S. 400, 404 (2012) ("It is beyond dispute that a vehicle is an 'effect' as that term is used" in our search-and-seizure cases). The officer conducted a "search" of the car when he directed the dog to sniff for drugs. *See Wright*, 961 N.W.2d at 413 (defining a "search" as "an examination conducted for the 'purpose of discovering proof of . . . guilt in relation to some crime.'" (quoting 2 John Bouvier, *A Law Dictionary* 498 (3d ed. 1848))). The search was unreasonable because the officer

committed a common law trespass to personal property. As we held in *Wright*, citizens may reasonably expect that an officer will not engage in conduct that is "unlawful, tortious, or otherwise prohibited" when conducting a warrantless investigation. 961 N.W.2d at 416.

The majority contends that even if the State violated the Fourth Amendment in conducting the search of Mumford's vehicle, the evidence would still come in because the officer acted in good faith. I join Justice Oxley's view on the good-faith exception's applicability in this case under the Fourth Amendment. But no matter what the result under the Fourth Amendment, the good-faith exception clearly has no bearing on Mumford's challenge under article I, section 8. We do not recognize such an exception under the Iowa Constitution. *State v. Cline*, 617 N.W.2d 277, 293 (Iowa 2000) (en banc) (declining to adopt a good-faith exception to the exclusionary rule for unconstitutional searches because "[t]o do so would elevate the goals of law enforcement above our citizens' constitutional rights"), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

I thus respectfully dissent and would hold that the officer's actions violated the search-and-seizure protections of both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution, and that the district court erred in failing to suppress the fruits of the unlawful search accordingly.